John C. GERMAN, d/b/a Chris German
Construction Company,
Plaintiff–Appellant,

v.

Ova WHALEY, d/b/a Whaley Brothers
Construction Company,
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

Nov. 7, 1988.

Joseph C. Wilson, III, Spears, Moore, Rebman & Williams, Chattanooga, for plaintiff-appellant.

Edmund Lee Baugh, Jr., Cleveland, for defendant-appellee.

OPINION

FONES, Justice.

The issue in this case is whether Ova Whaley, d/b/a Whaley Brothers Construction was an employee of plaintiff, John C. German, d/b/a as Chris German Construction Company, or whether he was an independent contractor.

The workers' compensation insurance carrier for German filed a complaint alleging that Ova Whaley owned and operated a business known as Whaley Brothers Construction Company; that on 2 August 1986, Whaley was operating a front end loader on a lot in Cleveland, Tennessee, when it flipped over on its side injuring Whaley; and that thereafter Whaley claimed he was an employee of German, that he was injured in the course and scope of his employment and that he was entitled to workers' compensation benefits. The complaint alleged that Whaley was in fact an independent contractor and asked the court to determine which relationship existed between the parties.

Whaley filed an answer and counterclaim wherein he alleged that he was at all times an employee of German and that he suffered a broken right arm and a knee injury when a front end loader turned over on him.

In his testimony at trial German was very cooperative in supporting Whaley's contention that he, German, had the right to control and did control the conduct of the work and had the right to hire and fire Whaley at any time. Nevertheless, we find that the trial judge erred in determining that Whaley was an employee and reverse and dismiss this case.

The trial court found that the employee had suffered a 25% permanent partial disability to the body as a whole and that gave rise to the issue of Whaley's average weekly wage. The trial court found that Whaley had performed only 108 hours of work for German in the twelve months preceding the accident and that his wages were based upon the operator's rate of $10 per hour. The significance of an employee working only 108 hours in a year and the operator's

rate of $10 per hour will be apparent in the factual recitation that follows.

Whaley's proof revealed that he did not do business as Whaley Brothers Construction Company. The printed invoices he submitted to German for the work he performed styled his business as "Whaley's Highlift And Dozer Service". The only equipment that Whaley expressly stated that he and his brother owned was a front end loader, also referred to as a high-lift, and a low boy truck to haul the loader around. However, the bills that he submitted to German reflect that he sometimes used a dozer and sometimes a backhoe in performing work for German.

German was a home builder and would engage Whaley to clear a building site and dig the basement. As a part of the operation that Whaley was responsible for it was necessary to haul away the excess brush, trees and dirt. For that purpose Whaley hired trucks and operators and billed German at the rate of $30 per hour. The bills reflect that for the equipment that Whaley operated himself, he charged German $50 per hour for the high-lift, $40 per hour for a dozer and $35 per hour for a backhoe. On several occasions Whaley billed German for a "chain saw man" at the rate of $10 per hour. Whaley testified that the standard rate for a machine operator was $10 an hour and apparently that was the sum that he considered appropriate for his work in operating the machinery.

Whaley testified that his brother James owned a one-half interest in the front-end loader and that "James gets half of what I make off of the machine". Whaley presented German with a bill after he finished all of the work to be performed on a particular job site and German paid him the gross amount billed without any deduction for withholding or social security. The record reveals that Whaley performed work with a high-lift, dozer or backhoe for twenty-three other contractors, entities and individuals from 1 January 1986 to 2 August 1986, the date of the injury. In that seven month period he billed those entities for 155 hours of machinery operation, 47 hours more than he worked for German in the 12 month period preceding the accident.

The trial judge noted that German testified that he had the right to supervise Whaley's work and also had the right to terminate the relationship at any time. Citing *Armstrong v. Spears*, 216 Tenn. 643, 393 S.W.2d 729, a 1965 Per Curiam Opinion of this Court, for the proposition that "the employer's right to terminate the employee at any time is incompatible with full control of work which is usually enjoyed by independent contractors," he found Whaley to be an employee.

In *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654 (Tenn.1982), we listed seven tests to be considered in the determination of an independent contractor or employee relationship and added this caveat: "These indicia are not absolutes which preclude examination of each work relationship as a whole, but are means of analysis." *Id.* at 656. The seven tests set out in *Masiers* are as follows:

(1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) self scheduling of working hours, and (7) being free to render services to other entities.

*Id.*

In this case our review of findings of fact by the trial court is *de novo*, with a presumption of the correctness of the finding, unless a preponderance of the evidence is otherwise. T.C.A. § 50–6–225.

On the termination issue, Whaley was terminated on each occasion that he completed the preparation of a house site and dug the basement. He performed no work for German and was free to work for others and did work for others until German called him to clear another job site. The fact that German may have theoretically retained the right to interrupt Whaley and fire him from any job site if he did not like the manner in which Whaley was performing the work does not *ipso facto* create an employee/employer relationship.

With regard to the right to control the conduct of the work, both Whaley and Ger-

man acknowledge that in fact it was necessary for German to meet Whaley at the house site, show him where the lot lines were and from the house plans, the dimensions of the basement. Factually that was the extent of the control exercised. German acknowledged that he did not know how to operate the machines that Whaley owned and operated and did not direct or control Whaley in the actual operation of the equipment. As we further noted in *Masiers:*

> [a] party to a contract can exercise direction and control over the results of the work without destroying the independence of the contract or creating an employer-employee relationship. *Barnes v. National Mortgage Company*, 581 S.W. 2d 957, 959 (Tenn.1979).

639 S.W.2d at 656.

German also acknowledged that Whaley was free to and did select the chain saw operators as well as the truckers who hauled away the debris. It is clear that under this record the method of payment, the freedom to select and hire helpers, the furnishing of tools and equipment and the freedom to render services to other entities, unequivocally establish Whaley as an independent contractor, and the evidence on the issues of termination and control is not persuasive of an employer-employee relationship.

We find that the weight of the evidence in this case preponderates against the finding of the trial judge.

The judgment of the trial court is reversed and this case is dismissed. Costs are adjudged against Whaley.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.