**Jerry Lynn BARGERY,**
**Plaintiff–Appellant,**

v.

**OBION GRAIN COMPANY,**
**Defendant–Appellee.**

Supreme Court of Tennessee,
at Jackson.

Feb. 20, 1990.

John E. Vaughn, Tiptonville, for plaintiff-appellant.

James M. Glasgow, Sr., James M. Glasgow, Jr., Union City, for defendant-appellee.

OPINION

FONES, Justice.

This is a direct appeal from the judgment of the Obion County Chancery Court that dismissed Jerry Lynn Bargery's action for Workers' Compensation benefits. The chancellor held that Mr. Bargery had not proven that he was Obion Grain Company's employee, and he therefore dismissed the suit. We affirm.

Obion Grain Company (hereinafter "Obion Grain") buys corn, soybeans, wheat, and other grains from farmers. It stores the grain in tanks. This grain is then moved from Obion Grain to a terminal elevator. The company owns one truck to haul grain, which is driven by its own employee. During the peak seasons, it often has to hire outside truck drivers to haul the grain to the terminal elevators. The standard fee paid to these truck drivers is ten cents per delivered bushel.

Employees of Obion Grain are required to use a time clock at work, while outside truck drivers are required to keep a ticket book which they bring in to get paid for each bushel. The truck drivers are told that if they want to work on a particular occasion the grain will be loaded onto their trucks on a first-come, first-serve basis.

Johnny Board is one of the outside truck drivers that Obion Grain occasionally used. Mr. Board is predominately a farmer, but he also owns a truck that he uses to earn money. He drives his own truck sometimes, but he often uses other drivers. In August of 1985, Mr. Board was looking for a driver for his truck. Jerry Lynn Bargery, the plaintiff, approached Mr. Board about a job. Mr. Board told Plaintiff that if he "could get the truck something to do, why, he could drive it." Plaintiff was also told that he would receive twenty-five percent of whatever Mr. Board received.

The two men went to Obion Grain and talked with Mike Miller, the manager at the company. It was decided that Plaintiff, driving Mr. Board's truck, would haul grain for the standard ten cents per bushel. Thus, Plaintiff received two and one-half cents for each bushel he hauled.

Plaintiff testified that Mr. Board told him at this meeting that Mr. Miller would be his boss and that he should do what Mr. Miller said. Mr. Board testified that he did tell Plaintiff to follow the manager's instructions. Mr. Miller, however, testified that he did not recall any such instruction being given. The evidence reveals that Obion Grain did instruct Plaintiff on where to take the grain that was loaded in his truck. On the other hand, Mr. Miller did not tell Plaintiff how many trips to make each day or what routes to take.

Plaintiff was paid directly from Obion Grain. Mrs. Lois Jean Thompson, who is in charge of the office operations at the company, testified as to the underlying facts of this transaction. Mr. Board asked Mrs. Thompson to take twenty-five percent of the money owed to him and to pay Plaintiff. He stated that he was busy and that it would be easier for her to do it. Mrs. Thompson also testified that she did not take social security and federal income taxes out of Plaintiff's check. She did not report the payments to Plaintiff on a W–2 form or any other form. She did complete a 1099 form for payments made to Mr. Board. This included all hauling done for Obion Grain during the year using Mr. Board's truck regardless of who drove it.

W–2 forms are used for employees' wages and 1099 forms are used for payments other than wages.

Mr. Board furnished the fuel for his truck, and he serviced it. He also provided insurance for the truck. Plaintiff hauled loads on Mr. Board's farm on at least two occasions during the time he was hauling for Obion Grain.

On 29 January 1986, Plaintiff was injured when he fell from Mr. Board's truck while at Obion Grain to pick up a load of grain. He was climbing the truck to unhook a tarp on top of the trailer when he fell.

Plaintiff and Mr. Board filed a claim for medical expenses with Mr. Board's insurance company in May of 1986. Plaintiff received the full coverage of $2,000.

On 22 January 1987 Plaintiff filed a complaint against Obion Grain for workers' compensation benefits. After the trial, the chancellor held that Plaintiff failed to show by a preponderance of the evidence that he was an employee of Obion Grain. The sole issue in this appeal is whether the chancellor properly ruled that Jerry Lynn Bargery was not Obion Grain's employee.

Plaintiff presents this Court with two arguments in support of his contention that he was the defendant's employee. First, Plaintiff argues that due to Obion Grain's control he was an employee and not an independent contractor. Second, Plaintiff alleges that his employment status can be based on the "lent employee" theory.

First, this Court set out the factors to be used when determining the status of a work relationship in *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654 (Tenn.1982). We stated:

There are a number of indicia to be considered by a trier of fact in determining the existence or nonexistence of an independent contractor relationship such as, (1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) self schedul-

ing of working hours, and (7) being free to render services to other entities. *Id.* at 656. The *Masiers* court noted that while all factors are important the "right to control" is the primary test. *Id. See also Stratton v. United Inter-Mountain Tel.,* 695 S.W.2d 947, 950 (Tenn.1985) and *Lindsey v. Smith & Johnson, Inc.,* 601 S.W.2d 923, 925 (Tenn.1980). This Court further explained that "a party to a contract can exercise direction and control over the results of the work without destroying the independence of the contract or creating an employer-employee relationship." 639 S.W.2d at 656.

■ In the present case, the Chancellor held, "[T]he only proof in this case with reference to [the right of control] is one that is contended by the Plaintiff that he was told where to deliver his grain." Appellate review of findings of fact by the trial court is *de novo,* accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (1988). After a review of Plaintiff's brief and a *de novo* review of the record, we find that the chancellor was correct in his conclusion that Obion Grain's only control over Plaintiff was the instruction on where to deliver his grain. Obion Grain did not control the details and methods of Plaintiff's work. It did not instruct him on the number of deliveries per day or the routes of the delivery. An instruction on where to deliver grain is a control over the end result of a job. It is a basic type of control that is consistent with the contractor-contractee relationship. *See Lindsey v. Smith and Johnson, Inc.,* 601 S.W.2d 923, 926 (Tenn.1980).

■ Plaintiff seems to totally rely on his contention that he was either the employee of Johnny Board or Obion Grain. Thus, when the chancellor held that Plaintiff was not Obion Grain's employee, Plaintiff argues that the court found him to be Mr. Board's employee. He argues that since Mr. Board had no control of his activities and thus was not his employer, then Obion Grain must be the employer. This is not true. The chancellor simply held that "the

Plaintiff has failed to prove that he is an employee of the Defendant, Obion Grain Company." It was not necessary for him to determine whether Plaintiff was Mr. Board's employee. As a result, Plaintiff's argument that Mr. Board had no day-to-day control over Plaintiff is not helpful in our determination in this case. There is one possibility that Plaintiff does not consider—that he is an independent contractor hired by an independent contractor (Mr. Board). The fact that Mr. Board had no control over Plaintiff is not relevant to the determination of whether Plaintiff was Obion Grain's employee. It is relevant in determining Plaintiff's employment relationship with Mr. Board, which is not the issue in this case. As long as his employment status stems from some form of a contractor-contractee relationship, the Chancellor was correct in his ruling.

■ In addition to Obion Grain's lack of control over the details of Plaintiff's work, there are other factors that indicate that Plaintiff was not an employee of Obion Grain. The method of payment was based on the amount of grain hauled. Also, payment was made to Mr. Board, and the checks to Plaintiff were an accommodation to Mr. Board. For federal income tax purposes, Plaintiff was not considered an employee. Obion Grain did not furnish any equipment. The truck, gas, and insurance were all purchased by Mr. Board. Plaintiff was not only free to render services to other entities, he in fact hauled material for Mr. Board during the time he was delivering for Obion Grain.

■ Plaintiff's last point in his argument that there is an employer-employee relationship is that grain hauling is an integral part of Obion Grain's business. He cites *Brademeyer v. Chickasaw Bldg. Co.,* 190 Tenn. 239, 229 S.W.2d 323 (1950) for the proposition that employee status is found when a plaintiff is engaged in an integral part of the defendant's business. Plaintiff is confusing independent contractor analysis and casual employee analysis. While it is true that an employer is not liable if the employee is a casual employee, Tenn.Code Ann. § 50–6–106(2) (1988), the casual em-

ployee analysis is not included as one of the factors in *Masiers*. In effect, Plaintiff is arguing that since he is not a casual employee he is also not an independent contractor. In *Cromwell General Contractor, Inc. v. Lytle*, 222 Tenn. 633, 642, 439 S.W.2d 598, 602 (1969), the court stated, "There is, however, no imposition of liability where an alleged employee is either (1) an independent contractor, *or* (2) a casual employee." (emphasis added). Since we fully analyzed the *Masiers* factors above, including the nature of the job, we find that an independent contractor relationship existed, and therefore Obion Grain is not liable.

■ Plaintiff's second argument is that employment status can be based on the "lent employee" theory of *Winchester v. Seay*, 219 Tenn. 321, 409 S.W.2d 378 (1966). This court adopted Professor Larson's view which states:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> (a) The employee has made a contract of hire, express or implied, with the special employer;
>
> (b) The work being done is essentially that of the special employer; and
>
> (c) The special employer has the right to control the details of the work.

*Id.* at 327, 409 S.W.2d at 381. This argument fails for the same reason as the first—Obion Grain did not have the right to control the details of Plaintiff's work.

The judgment of the Chancellor is affirmed and the costs of this appeal are taxed to Plaintiff-Appellant.

DROWOTA, C.J., and HARBISON, COOPER and O'BRIEN, JJ., concur.