FILED
Jul 17, 2019
02:31 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **Robert Kent,** | ) **Docket No. 2018-06-1969** |
| **Employee,** | ) |
| | ) **State File No. 81424-2018** |
| **v.** | ) |
| **Delatorre Art Design, Inc.,** | ) **Judge Kenneth M. Switzer** |
| **Employer.** | ) |
| | ) |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

Robert Kent alleged injuries while working for Delatorre Art Design and requested a panel of physicians. Mr. Kent asserted he was Delatorre's employee; Delatorre contended he was an independent contractor. The Court conducted an expedited hearing on July 12, 2019, and holds that Mr. Kent was an independent contractor and is not likely to prevail at a hearing on the merits regarding his request.

### History of Claim

Mr. Kent, a Florida resident, worked as a rock-technician artist for Delatorre at the Nashville Zoo and injured his shoulder on October 20, 2017. Per his affidavit, Mr. Kent also repeatedly scratched himself on the job with rebar and tire wire, resulting in a staph infection. He still suffers shoulder pain and residual problems from the infection. Mr. Kent received unauthorized medical treatment for these injuries.

Delatorre denied the claim, asserting that Mr. Kent was an independent contractor. The hearing testimony revolved almost exclusively on the parties' recollection of Mr. Kent's employment status.

Mr. Kent testified that Mike Torres, owner of Delatorre, contacted him in May 2017 to help work on a project involving the creation of several themed exhibits at the Nashville Zoo. Mr. Kent understood he was hired for this one project only. Mr. Torres admitted he told Mr. Kent the work would be forty hours per week or more. Mr. Torres offered $40 per hour. Mr. Kent asked if he would receive a per diem. Mr. Torres

declined but said he would pay Mr. Kent's hotel expenses and agreed to $43 per hour. Mr. Kent said he knew and liked the other artists working on the project. According to Mr. Torres, the artists' work requires specialized skills, and those who can perform the work are a small community.

Mr. Kent testified that Mr. Torres was his supervisor. Mr. Torres determined the daily tasks and informed him which area of the zoo he would be working at every day. Mr. Kent agreed that Mr. Torres conveyed "the overall artistic vision of the zoo" and did not tell him what to do "hour to hour." For his part, Mr. Torres said that he did not direct how to sculpt or texture the rock, he trusted Mr. Kent to make independent decisions and hired him on the basis of his experience "so [he] wouldn't have to oversee or hover over someone's back."

Mr. Torres agreed he was responsible for the final product to the zoo but stated he did not remain on the jobsite every time Mr. Kent worked. Mr. Torres explained that as the "art director" of the entire project, he wanted to make sure it reflected "continuity throughout the zoo."

As for payment, Mr. Kent said Mr. Torres decided that he would pay him weekly by direct-deposit check and withhold taxes rather than have Mr. Kent submit an invoice. Mr. Torres kept track of Mr. Kent's hours. According to Mr. Torres, Mr. Kent did not want to invoice him. Mr. Torres agreed to put him on the payroll at Mr. Kent's request and "for his convenience."

Mr. Kent further stated that Mr. Torres set the work hours from 7:00 a.m. until 3:30 p.m. Monday through Friday. He said he was not free to show up or leave when he wanted to and said he would have "probably gotten fired" by Mr. Torres if he had. He further stated he arrived after 7:00 a.m. a few times and "sometimes he'd [Mr. Torres] say something about it." He was never disciplined for arriving late but believed it was possible.

In contrast, Mr. Torres recalled that he did not require Mr. Kent to work at those times. Instead, he hired "day laborers" to assist him and other artists during those hours. Mr. Torres conceded on cross-examination that he expected Mr. Kent to stay until 3:30 each day. Mr. Torres maintained that Mr. Kent had the ability to work past 3:30 and sometimes did. He said he would not care if Mr. Kent arrived at 8:00 a.m. or even noon, but "it just affects the work getting done" because the laborers were onsite to assist during those hours. Mr. Torres denied setting Mr. Kent's work schedule.

At some point, Mr. Kent missed work because he was sick. He called Mr. Torres at the outset to say he was ill and unable to work, but he did not call in the next two days that he missed. Mr. Torres recalled the same event as follows: Mr. Kent left work on a

2

Friday, never called in and returned on Thursday, worked a half-day on Friday, and then was out the entire next week because Mr. Kent returned to Florida.

Mr. Kent testified that he was not able to hire assistants. Mr. Torres said Mr. Kent could have done so but would have had to pay them. Mr. Kent never asked to hire anyone but recommended prospective hires to Mr. Torres. The parties agreed Mr. Torres had the right to terminate Mr. Kent.

Mr. Kent acknowledged he brought his own "small, specialty tools," but Mr. Torres provided the "main, major tools."

Mr. Kent further testified that he was not free to work for other entities while working for Delatorre. Mr. Torres, however, said "there was no understanding as to exclusivity."

### Findings of Fact and Conclusions of Law

Mr. Kent must present sufficient evidence from to show he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2018). Tennessee Code Annotated section 50-6-102(12)(D)(i) directs courts to consider the following factors when determining whether an individual is an employee or an independent contractor:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities[.]

The Appeals Board characterized the right to control the conduct of the work as the most significant factor when determining whether one is an employee or independent contractor. *Thompsen v. Concrete Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *14 (Feb. 10, 2015).

Applying each factor, Mr. Torres credibly testified that he instructed Mr. Kent which area of the zoo he was to work on each day, but he did not tell him how to sculpt, texture or create the artificial rocks. Mr. Torres hired him because Mr. Kent was an artist with that particular skill set. Mr. Torres's explanation that he oversaw the entire project and set daily work areas strikes the Court as Mr. Torres merely fulfilling his responsibility to the zoo to lead and execute the project, fulfilling his role as art director and ensuring continuity throughout the zoo. He did not always remain onsite or closely scrutinize Mr. Kent's work as a supervisor might in the typical employment setting.

3

The Tennessee Supreme Court explained, "[A] party to a contract can exercise direction and control over the results of the work without destroying the independence of the contract or creating an employer-employee relationship." *Wright v. Knox Vinyl & Aluminum Co.,* 779 S.W.2d 371, 373 (Tenn. 1989). Further, an independent contractor is "one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result." *Galloway v. Memphis Drum Serv.,* 822 S.W.2d 584, 587 (Tenn. 1991). Here, Mr. Torres directing Mr. Kent *where* to work is not equivalent to telling him *how* to work. Thus, the right to control the conduct of the work – the most significant factor – favors a finding that Mr. Kent was an independent contractor.

As for the right of termination, in this case, Mr. Torres could have terminated Mr. Kent at any time. However, "the fact that the contractor retained the right to fire the worker from any job site if he did not like the manner in which [the worker] was performing the work does not *ipso facto* create an employee-employer relationship." *Wright,* at 374.

As for the method of payment, this factor generally supports a finding of an employment relationship because Mr. Torres paid him wages via W-2 rather than a 1099 and withheld taxes. The Supreme Court in *Starflight, Inc. v. Thoni,* 773 S.W.2d 908, 909 (Tenn. 1989) cautioned, "This, however, is only one factor among a number of indicia which are relevant to the determination of the relationship from a legal standpoint."

Concerning the freedom to select and hire helpers, Mr. Kent testified that he did not hire helpers but recommended prospective hires to Mr. Torres. Mr. Torres agreed but clarified that Mr. Kent never asked to hire helpers and could have done so at his own expense. The Court finds this factor favors neither party.

As to the furnishing of tools, this factor also favors neither party. Mr. Kent brought and used his sculpting tools, as apparently is common in his field, but Mr. Torres provided the "main, major tools" for the project.

Regarding scheduling, the Court finds that while Mr. Torres expected Mr. Kent to arrive at 7:00 a.m. and leave at 3:30 p.m. so he could work with other artists and the laborers, he did not require this. An expectation and a requirement are not synonymous. Mr. Kent acknowledged that when he arrived past 7:00 a.m., Mr. Torres commented on it, but he suffered no discipline or other adverse consequence. More telling on this point is Mr. Kent's testimony that he did not feel obligated to call in sick every day when that occurred, which is generally expected of employees. Further, Mr. Torres testified that Mr. Kent occasionally worked past 3:30 p.m. The Court finds that Mr. Torres did not set Mr. Kent's work hours. This factor favors the existence of an independent contractor relationship.

4

Finally, regarding the freedom to offer services to others, Mr. Torres testified he hired Mr. Kent with no understanding as to exclusivity. He further testified that he told Mr. Kent he could offer him forty hours of work. This factor favors neither party.

The majority of the factors that favor one party or the other, especially the element on controlling the work activities, supports the existence of an independent contractor relationship. Thus, the Court holds Mr. Kent failed to present sufficient evidence that he would likely prevail at a hearing on the merits that he was an employee of Delatorre.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Kent's requested relief is denied at this time.

2. This case is set for a status conference on **September 4, 2019, at 9:00 a.m. Central time**. You must call 615-532-9552 or toll-free 866-943-0025 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED July 17, 2019.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

5

## APPENDIX

Exhibits:
1. Mr. Kent's Affidavit
2. W-2
3. Employer's Responses to Requests for Admissions

Technical Record:
1. Petition for Benefit Determination
2. Employee Position Statement to Mediator
3. Employer Position Statement to Mediator
4. Dispute Certification Notice and Employee's additional issues
5. Request for Scheduling Hearing
6. Order on Scheduling Hearing
7. Employee's Motion to Extend Deadline for Employee to Identify Medical Experts
8. Order Granting Motion to Extend
9. Request for Expedited Hearing
10. Order Setting Expedited Hearing
11. Employee's Pre-Hearing Brief
12. Employer's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on July 17, 2019.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Adam Selvidge, Employee's Attorney | | X | adam@reasonoverlaw.com |
| Brent Morris, Rosalia Fiorello, Employer's Attorneys | | X X | bmorris@wimberlylawson.com rfiorello@wimberlylawson.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____

LB-1099    rev. 10/18                    Page 2 of 2                    RDA 11082



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                        RDA 11082

9. My expenses are:

Rent/House Payment $_____ per month    Medical/Dental  $_____ per month

Groceries        $_____ per month    Telephone      $_____ per month

Electricity      $_____ per month    School Supplies $_____ per month

Water            $_____ per month    Clothing       $_____ per month

Gas              $_____ per month    Child Care     $_____ per month

Transportation  $_____ per month    Child Support  $_____ per month

Car              $_____ per month

Other            $_____ per month (describe: _____)

10. Assets:

Automobile              $_____    (FMV) _____

Checking/Savings Acct. $_____

House                   $_____    (FMV) _____

Other                   $_____    Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                           RDA 11082